**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

**LEANN MARGARET CANZONERI**,

                               Plaintiff,

                               **DECISION AND ORDER**
v.                               1:17-CV-00808-RJA

**NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY**,

                               Defendant.

---

## INTRODUCTION

Plaintiff Leann M. Canzoneri ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of a final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. (Dkt. 1). The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkts. 15 and 18). The Court assumes the parties' close familiarity with the procedural history, administrative record, and all issues before the Court. The Court has carefully considered the entire record, and for the reasons set forth below, the Court **GRANTS** Plaintiff's motion for remand and **DENIES** the Commissioner's motion for judgment on the pleadings.

## DISCUSSION

This Court reviews the record to determine whether the Commissioner applied the correct legal standard and whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g). Plaintiff argues the ALJ did not properly weigh the medical opinion evidence; that the residual functional capacity ("RFC")[1] did not adequately incorporate Plaintiff's impairments; and that the ALJ did not properly evaluate

---

[1] The RFC is the most a plaintiff can still do despite his or her mental and/or physical limitations. 20 C.F.R. §416.945(a)(1).

Plaintiff's subjective complaints. The Court agrees and will remand this matter to the ALJ for the reasons stated herein.

At the age of 10, Plaintiff underwent brain surgery to remove a benign tumor that was causing her to have seizures. (Tr. 392). During the operation, part of her amygdala was removed as planned; however, she suffered a stroke during the procedure which "left her with right hemiparesis and required months of rehabilitative speech therapy, physical therapy, and occupational therapy." (Tr. 280, 392). Plaintiff, now 31 years old, was able to complete high school and one year of college. (Tr. 97, 100). Her most recent employment was working as a live-in child caretaker. (Tr. 58). Plaintiff alleges disability since November 9, 2012 due to severe anxiety, panic attacks, and depression. (Tr. 207).

The ALJ found Plaintiff to have the severe impairments of anxiety disorder and depressive disorder. (Tr. 19). The ALJ assessed that Plaintiff had the following RFC:

> [Plaintiff can] perform a full range of work at all exertion levels consistent with the broad world of work. 'Broad world of work' is defined in Social Security Ruling 83-10 as work, which exists at all exertional levels. It may include skilled and semi-skilled work as well as unskilled work. The claimant cannot work in areas with unprotected heights or work around heavy, moving or dangerous machinery. She cannot climb ropes, ladders, or scaffolds. She has occasional limitations in the ability to understand, remember and carry out detailed instructions and occasional limitations in the ability to maintain attention and concentration for extended periods.

(Tr. 21).

Plaintiff first argues that the ALJ failed to properly evaluate the opinions of the treating psychiatrists, the neuropsychologist, and the consultative examiner. (Dkt. 15 at 21).

If a treating physician is afforded less than controlling weight, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our . . . decision for the weight we give [the claimant's] treating source's opinion."). The factors the ALJ must consider when assessing a treating physician are: the examining relationship, the

treatment relationship, the length of the treatment relationship, and nature and extent of the treatment relationship, the clinical and diagnostic supportability of an opinion, the consistency of that opinion with the record as a whole, the physician's specialization, and other factors. 20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ did not adequately apply the treating physician rule to Drs. Willinsky and Joseph. The ALJ assigned a weight to two consultative examiners, Drs. Santarpia and Totin, but discounted the treating physicians because they provided GAF[2] scores. (Tr. 34). Multiple physicians assigned Plaintiff GAF scores over their treatment periods, but the ALJ concluded that "GAF ratings are only a snapshot opinion about the level of functioning and it can include factors other than a claimant's mental functioning such as employment or societal factors other than a claimant's mental functioning such as employment or societal factors. They therefore, do not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Accordingly, such scores are given little weight." *Id*. This statement was the only analysis of the medical opinion evidence in the record. Categorically dismissing the opinions of all Plaintiff's physicians who provided GAF scores—some of whom are treating physicians—falls well below the standard of analysis required under the treating physician rule. There is no indication that the ALJ considered any of the required factors set forth in 20 C.F.R. § 404.1527(c).

Treating physicians Drs. Willinsky and Joseph, among other physicians, were discussed extensively throughout the ALJ's decision. *See* (Tr. 24-33) (Dr. Willinsky and Dr. Joseph's findings on examination were mentioned or discussed a total of 10 times). But the Court cannot discern from the ALJ's decision what portions of Drs. Willinsky and Joseph's opinions and treatment notes, apart from the assigned GAF scores, were relied on to help form the basis for Plaintiff's RFC, if at all. The Court notes that the ALJ's discussion of the opinion evidence is merely three sentences out of the decision's 20 pages. If the ALJ found that the only available opinion evidence from treating physicians

---

[2] "The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 FR 50746-01, 2000 WL 1173632, at *50764 (Aug. 21, 2000).

was in the form of GAF scores—and those scores were all given little weight—then it was incumbent on the ALJ to further develop the record. *See Covey v. Colvin*, 204 F.Supp.3d 497, 507 (W.D.N.Y. 2016) (the ALJ's rejection of a treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original); *see also Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837 (W.D.N.Y. Apr. 10, 2017). The Court therefore directs the ALJ on remand to reevaluate the opinions of all physicians, both treating and non-treating, as well as the consultative examiner, and assign weight to treating physicians Drs. Willinsky and Joseph and others, if appropriate. The Court further directs the ALJ to supplement the record if the ALJ finds that little weight should be given to the treating physicians.

Plaintiff also argues that the ALJ failed to properly consider whether Plaintiff's statements regarding her impairments and limitations are consistent with the medical evidence in the record. (Dkt. 15 at 27-29).

The Evaluation of Symptoms in Disability Claims policy guidance states that the ALJ must consider a plaintiff's "persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016); *see* 20 C.F.R. §§ 404.1529(c), 416.929(c). At the same time, the ALJ must also consider reasons why a plaintiff might not have pursued certain treatment. *See* SSR 16-3p, at *8-*9 (indicating the ALJ must also consider, for example, an individual's reason for not agreeing to take prescription medications is because the side effects are less tolerable than the symptoms).

Here, the ALJ had found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the record. (Tr. 28-29). However, the ALJ provided no explanation as to what testimony or other statements specifically provided by Plaintiff were inconsistent with the medical evidence. The ALJ additionally never questioned Plaintiff during testimony as to why she never pursued more intensive treatment or why she failed to consistently show up to her mental

health-related appointments. The Court notes that Plaintiff's mental health counselor had recommended a partial hospitalization program, as she needed a higher level of care than therapy sessions; additionally, Ms. Mulligan, P.A. of Dent Neurological had recommended Plaintiff undergo either transcranial magnetic stimulation or electroconvulsive therapy— historically referred to as electroshock therapy. (Tr. 633-35). These therapies certainly are not conservative treatment and it is understandable why Plaintiff may not have agreed to this course of treatment, given her documented nightmares and flashbacks to when she had brain surgery at the age of 10. (Tr. 52-55, 635-38). Plaintiff's medications were also constantly readjusted and were the source of great distress to her if she believed she would run out of her medication before her next appointment. (Tr. 387, 389-90, 570-72, 587-89, 597-99, 607). Because the ALJ does not discuss the reasons for discounting Plaintiff's statements, the Court cannot discern whether the ALJ's credibility determination is based on substantial evidence.

Plaintiff additionally argues that the ALJ failed to properly consider her RFC. (Dkt. 15 at 25-27). The Court notes that though the ALJ extensively discussed the medical opinions and other evidence in the record, the ALJ does not explain which evidence he relies on as the basis for each functional limitation of the RFC. Notably, as discussed above, the fact that the ALJ discounted the opinion evidence of all treating physicians creates a "significant and obvious gap in the evidentiary record[.]" *Covey*, 204 F.Supp.3d at 507. Additionally, the ALJ does not address or mention any of Plaintiff's PHQ-9[3] scores, which consistently indicated severe depression. (Tr. 579, 583, 587, 590, 597, 601, 641, 633, 635, 638). This evidence, if it was not considered, may impact the ALJ's decision regarding the assessment of "occasional limitations in the ability to understand, remember and carry out detailed instructions and occasional limitations in the ability to maintain attention and concentration for extended periods." (Tr. 21).

In light of this, the Court cannot discern whether the RFC was based on substantial evidence. On remand, the ALJ should reevaluate all evidence and the medical opinions

---

[3] "PHQ–9 refers to a self-administered patient health questionnaire that is used to assess and monitor the severity of a patient's depression and/or anxiety." *Polanco v. Comm'r of Soc. Sec.*, 304 F.Supp.3d 345, 360 n.6 (S.D.N.Y. 2018).

in the record and assign weights to the treating physicians and if applicable, comprehensively set forth good reasons for affording less than controlling weight. The ALJ should also discuss which portions of the evidence form the basis for the ALJ's decision to provide specific functional limitations incorporated in the RFC.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for remand (Dkt. 15) is granted. The Commissioner's motion for judgment on the pleadings (Dkt. 18) is denied.

**IT IS SO ORDERED.**

            __*s/Richard J. Arcara*_____
            **HONORABLE RICHARD J. ARCARA**
            **UNITED STATES DISTRICT COURT**

**Dated:** May 29, 2019